Filed 4/28/15  In re J.T. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.T.,<br><br>    Defendant and Appellant. | E061335<br><br>(Super.Ct.No. RIJ112684)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Tamara L. Wagner, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent

1

Defendant and appellant S.T. (mother) is the mother of J.T., who was three years old at the time of the latest challenged order. Mother appeals from the juvenile court's order of June 5, 2014, denying her petition under Welfare and Institutions Code section 388.[1] Mother argues the court abused its discretion when it denied her petition. Mother also argues the court erred at the October 7, 2013, disposition hearing when it found the Department of Public Social Services (DPSS) had complied with the notice requirements imposed by the Indian Child Welfare Act (ICWA) (25 U.S.C., § 1901, et seq.) As discussed below, we reject both arguments and affirm the juvenile court's orders.

### STATEMENT OF FACTS AND PROCEDURE

*Prior Child Welfare Issues re J.T.'s Three Older Siblings—2006-2013*

Mother lost her parental rights to J.T.'s three older siblings in 2013. Prior to that, his two oldest siblings were declared dependents in 2006 because of mother's transient lifestyle and participation in domestic violence. Another older sibling was detained at birth, declared a dependent child and returned to mother on family maintenance in 2007. The two oldest siblings were returned to mother on family maintenance in 2008. The dependency was terminated later that year. The children were again detained in 2010 because mother physically abused one of them and abused drugs and alcohol. They never returned to mother's care.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

*Prior Dependency for J.T.—2011-2013*

In March 2011, mother gave birth to J.T., her fourth child, while in a prison treatment program, and she received family maintenance services for him. In March 2012, J.T. was detained when mother was incarcerated for an outstanding warrant. J.T. was returned to mother eight days later on family maintenance. In July 2012, J.T. was again detained after mother got into a physical altercation with another resident in her transitional living facility. In August 2012, J.T. was returned to mother's care on family maintenance. In February 2013, J.T.'s dependency was terminated and mother was given full custody.

*Detention on Current Dependency - July 2013*

Only five months later, in July 2013, J.T. and his one-month-old brother, M.T., were detained after mother called police during a physical altercation with M.T's father.[2] M.T. fell off the bed during the altercation. Mother admitted to drinking alcohol earlier in the evening and driving with the two children while drunk. DPSS detained the children.[3]

On July 24, 2013, the juvenile court ordered the children detained and granted mother supervised visits. Also on that date, mother filed a form ICWA-020, Parental Notification of Indian Status, in which she checked the box denoting "I may have Indian

---

[2] M.T.'s father is not J.T.'s father.

[3] M.T. is not the subject of this appeal. He is mentioned only where necessary. Each of the two children was eventually placed with his respective paternal grandparents.

ancestry" but failing to give the names of any particular tribes. The court found that ICWA may apply and ordered DPSS to provide ICWA notices.

On August 15, 2013, DPSS sent ICWA notices to the three Cherokee tribes listing J.T.'s father's name, but under mother's name the tribe was listed as "No Tribe Specified." No notices were sent to any Blackfeet tribes. The Cherokee tribes responded that the two children are not eligible for tribal membership based on the information provided.

On August 16, 2013, the social worker interviewed mother regarding her Native American ancestry. Mother reported that she might have Cherokee ancestry on her mother's side through her great grandfather and Blackfeet ancestry on her father's side through her great grandmother. DPSS did not send additional ICWA notices based on this new information.

*Jurisdiction and Disposition—October 2013*

On October 7, 2013, the juvenile court took jurisdiction of the two children and denied mother reunification services under section 361.5, subdivision (b)(10), because mother had failed to reunify with J.T.'s three older siblings. The court set a section 366.26 hearing and limited mother's visits to once per month. The court followed the DPSS recommendation and found that ICWA noticing requirements has been fulfilled and that ICWA does not apply.

4

*Section 388 Petition Regarding M.T.—January/February 2014*

On January 31, 2014, mother filed a section 388 petition regarding J.T.'s sibling, M.T., asking for reunification services.

The hearing on the section 388 petition was held on February 13, 2014. Mother testified about the services she had completed, her visits with M.T., and her relationship with him. The juvenile court denied the section 388 petition, stating it "would find that these do represent changed circumstances, but the Court's not able to say that this finding of changed circumstances is an indication that the Court has any reasonable belief that her future course of conduct or future history, if you will, is going to be any different than her past history."

On February 18, 2014, mother appealed from the juvenile court's denial of the section 388 petition regarding M.T., argued DPSS had not complied with ICWA notice requirements, and challenged the October 7, 2013, visitation order. On August 19, 2014, this court issued a limited remand so DPSS could properly notice all identified Native American tribes, but otherwise affirmed the court's orders.

*Placement with Paternal Grandparents—March 2014*

On March 14, 2014, J.T. was placed with his paternal grandparents in Arkansas. The paternal grandparents had expressed interest in adopting J.T. and raising him with his sister, who had previously been placed with the paternal grandparents in legal guardianship.

5

*Section 388 Petition—May 2014*

On May 15, 2014, mother filed a section 388 petition regarding J.T. This petition is the subject of this appeal. In this petition, as with the previous petition regarding M.T., mother asked for reunification services. Mother claimed that her circumstances had changed in that she had completed an outpatient substance abuse program, consistently tested negative for drugs, completed parenting and "aggressive replacement" classes, participated in NA/AA meetings, was currently attending an additional outpatient substance abuse program and parenting program, was visiting J.T. regularly, and had obtained housing and employment. Mother stated the requested order would be in J.T.'s best interest because he has a bond with mother.

In an addendum report filed June 2, 2014, DPSS reported it could not assess mother's current circumstances in response to the section 388 petition because mother's telephone had been disconnected and mother had not contacted the social worker or provided a new means of contacting mother. DPSS recommended the court terminate mother's parental rights to J.T. and set a Planned Permanent Living Arrangement with the paternal grandparents, with the goal of adoption, as J.T.'s permanent plan.

On June 5, 2014, the juvenile court held a combined hearing on the section 388 petition and to determine a permanent plan for J.T. under section 366.26. Mother testified that, after the court denied her reunification services at the disposition hearing on October 7, 2013, she had completed a seven- or eight- month outpatient substance abuse program at MFI, attended AA/NA meetings, tested negative for drugs, completed an

6

aftercare program through MFI, completed an "aggressive replacement treatment" and a parenting program, and was currently in an outpatient aftercare program to maintain her sobriety. Mother had an AA/NA sponsor and had learned coping skills to deal with her anger. Many services were available through the aftercare program, including drug testing, parenting, anger management and domestic violence. Mother testified she had her own one-bedroom apartment and was working full time providing day care for her uncle's children. Mother testified about her relationship with J.T., how she had visited him regularly and had maintained telephone contact with him after he moved to Arkansas, despite the lack of cooperation from the paternal grandparents. After hearing mother's testimony and argument from counsel, the court found that mother's circumstances were changing but not changed, and that it would not be in J.T.'s best interest to give up the stability he had acquired. The court denied the petition.

County counsel pointed out that DPSS would need to conduct further ICWA noticing and, "in an abundance of caution" asked that the section 366.26 hearing be continued until that could be accomplished. The court pointed out the importance of complying with ICWA and proceeded to extensively question mother and the two maternal aunts who were present about any Native American heritage in mother's family. The section 366.26 hearing was continued to October 3, 2014.

Mother filed her notice of appeal on June 9, 2014.

On October 20, 2014, DPSS filed a Request for Judicial Notice containing the ICWA noticing documentation sent to the Blackfeet Nation in July 2014 and to the three

Cherokee tribes in September 2014. We hereby GRANT the request for judicial notice. (Evid. Code, §§ 459, 452; *In re Marina S.* (2005) 132 Cal.App.4th 158, 166)

## DISCUSSION

### 1. *ICWA Notice*

Mother first argues the juvenile court erred when it found at the disposition hearing on October 7, 2013, that the Indian tribes had been properly noticed and that ICWA does not apply. Specifically, mother contends the ICWA notices mailed on August 15, 2013, were inadequate because they did not include the information she supplied the following day that she had possible Cherokee and Blackfoot heritage. We agree that the notices were inadequate and that the juvenile court erred when it found that the notices complied with ICWA. However, as mother acknowledges in her reply brief, the notices sent in July and September of 2014 do fully comply with ICWA. Given that the purposes[4] of the ICWA noticing requirements have been fulfilled here, we see no need to reverse the disposition and subsequent orders. Mother has not carried her burden on appeal to establish that reversal is required.

### 2. *Section 388 Petition*

Mother also argues the juvenile court erred in June 2014 when it denied her section 388 petition. We disagree, as explained below.

---

[4] No tribe with which J.T. may be affiliated was denied participation in these dependency proceedings. (See *In re Karla C.* (2003) 113 Cal.App.4th 166, 174.) Two of the three Cherokee tribes responded that J.T. did not meet the definition of an Indian child within their tribes, as did the Blackfeet Nation.

8

"Under section 388, a person with an interest in a dependent child may petition the court to change, modify, or set aside a previous court order.  The petitioning party has the burden of showing, by a preponderance of the evidence, that there is a change of circumstances or new evidence, *and* the proposed modification is in the child's best interest.  [Citations.]"  (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.)

"The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established.  [Citation.]"  (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.)  "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'  [Citation.]"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, as described above, mother testified that, after the court's order denying reunification services, she participated in drug treatment and was enrolled in an aftercare program, was testing negative for drugs and attending AA/NA meetings, had participated in parenting, anger management and domestic violence classes and "aggressive replacement treatment," and had obtained her own apartment and employment so she could support J.T. should she be reunited with him.

However, as the People point out, in the eight months between the denial of reunification services and the section 388 hearing, mother missed an entire month of AA/NA meetings in December 2013/January 2014.  Further, the record shows she last

9

attended a meeting on March 19, 2014, and did not resume attendance for another two months—*after* filing the section 388 petition. In addition, the record in the prior appeal shows that mother had participated in reunification services during at least three previous dependencies to address her drug and alcohol abuse and physical abuse of J.T.'s siblings, but failed to benefit from them. Given this evidence of mother's long-term struggle with substance abuse and physical violence, and her history of failing to derive lasting benefit from reunification services designed to help her safely parent J.T. and his three older siblings, we cannot say that the juvenile court abused its discretion when it denied her section 388 petition.

### DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                              P. J.


We concur:

McKINSTER
                J.

KING
                J.

10